1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DANIEL LEE THORNBERRY,                      No. 2:25-cv-0733 CSK P

12                 Plaintiff,                     ORDER

13           v.

14    JASON SCHULTZ, et al.,

15                 Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C.

18    § 1983 and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This

19    proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

20          Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

21    Accordingly, the request to proceed in forma pauperis is granted.

22          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

23    §§ 1914(a), 1915(b)(1).  By this order, plaintiff is assessed an initial partial filing fee in

24    accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the Court will

25    direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

26    and forward it to the Clerk of the Court.  Thereafter, plaintiff is obligated to make monthly

27    payments of twenty percent of the preceding month's income credited to plaintiff's trust account.

28    These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

                                                  1

1    the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

2    § 1915(b)(2).

3    I.        SCREENING STANDARDS

4             The court is required to screen complaints brought by prisoners seeking relief against a

5    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

6    court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally

7    "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

8    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

9             A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

10   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

11   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

12   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

13   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

14   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

15   Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

16   2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

17   meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

18   1227.

19            Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

20   statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

21   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

22   Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

23   In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

24   formulaic recitation of the elements of a cause of action;" it must contain factual allegations

25   sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.

26   However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

27   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.

28   Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

1  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

2  true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

3  pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

4  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

5  II.    PLAINTIFF'S COMPLAINT

6         Plaintiff alleges the following.  On or about October 29, 2024, upon return from outside

7  medical treatment, plaintiff was housed on B facility, Building 5, at California State Prison,

8  Sacramento ("CSP-SAC"), and assigned a cell already occupied by another inmate who was

9  sleeping on the lower bunk.  (ECF No. 1 at 3.)  At that time, the receiving and release sergeant,

10 John Doe #1, and the Building 5 housing officer, John Doe #2, were responsible for housing

11 assignments.  (Id.)  Unbeknownst to plaintiff, at that time, a medical practitioner had authorized

12 plaintiff's housing restriction to the lower bunk based on plaintiff's medical needs, and plaintiff

13 asserts such authorization was on file and available for the defendants to view on October 29,

14 2024.  (Id. at 7.)  Defendants failed to assign plaintiff to a cell with lower bunk availability.

15        Some time between October 29 and November 5, 2024, after plaintiff climbed to the

16 upper bunk without the aid of a ladder, plaintiff descended the bunk, attempting to stabilize his

17 descent by putting his foot clothed in a sock on the locker parallel to the bunk.  (Id. at 8.)

18 Plaintiff slipped and fell, striking his forehead and left kneecap.  (Id.)  Plaintiff suffered a wound

19 to his forehead, which bled until medical staff were able to stop the blood flow and bandage the

20 injury.  (Id. at 9.)  Plaintiff also injured his lower back, exacerbating his pre-existing spinal

21 stenosis, degenerative disc disease, scoliosis, and herniated and ruptured discs.  (Id.)

22        First, plaintiff alleges the prison conditions violated his Eighth Amendment right to safe

23 housing conditions.  (Id. at 10.)  He contends that the physical design of the cell was a clear and

24 present danger to his safety based on the failure to include an OSHA approved method for

25 plaintiff or other similarly situated inmates to safely access the upper bunk.  (Id.)  Instead,

26 inmates are required to use cell furniture not designed for humans to safely access the upper bunk.

27 (Id.)  Plaintiff contends that a number of inmates have previously been injured while accessing

28 upper bunks without ladders or other safe measures, providing the prison administration with

3

1    direct and constructive notice of the risk of harm posed to plaintiff by housing him in a cell

2    without such safety measures.  (Id. at 13.)

3        Second, plaintiff objects that he was not informed that he was given a lower bunk

4    authorization for medical reasons, and the cellmate already sleeping on the lower bunk was not

5    instructed to move to the upper bunk so that plaintiff could use the lower bunk.  (Id. at 11.)

6    Plaintiff contends that the correctional supervisor (Sergeant) of Facility B had "the obligation per

7    departmental rules and regulations and the law to ensure plaintiff was provided housing that

8    complied with the physician's restriction on lower bunk assignment."  (Id. at 13.)  Plaintiff

9    alleges that John Does #1 and #2 "were directly aware and legally noticed as to the risk of harm

10    to the plaintiff by failing to ensure he was housed in a cell on a lower bunk."  (Id.)

11        Plaintiff also alleges he notified defendants, executive staff at CSP-SAC, and those

12    responsible for housing at CDCR statewide as to the risks inmates were being subjected to, but

13    received no response other than the summary denial of his grievance.  (Id. at 14.)  He contends

14    that other CDCR prisons are equipped with ladders built in, which have prevented falls, and

15    argues these facts and statistics also constitute notice.  (Id. at 14-15.)

16        Plaintiff seeks injunctive relief requiring the Secretary of Corrections to retrofit all inmate

17    cells with ladders or other suitable measures to prevent inmates from falling while accessing

18    upper bunks.  (Id. at 6.)  Plaintiff also seeks money damages.  (Id.)

19        As defendants, plaintiff names Jason Schultz, Warden; John Doe #1, correctional

20    sergeant; and John Doe #2, correctional officer, housing unit #5, second watch.  (ECF No. 1 at 2.)

21    All defendants were employed at CSP-SAC.  (Id.)  Plaintiff sues all defendants in their personal

22    and official capacities.  (Id. at 16.)

23    III.    DISCUSSION

24        A.  Eleventh Amendment Bars Official Capacity Claims

25        Claims for damages against the state, its agencies, or its officers for actions performed in

26    their official capacities are barred under the Eleventh Amendment, unless the state waives its

27    immunity.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not abrogate the

28    states' Eleventh Amendment immunity from suit.  See Quern v. Jordan, 440 U.S. 332, 344-45

1  (1979); see also Hafer v. Melo, 502 U.S. 21, 30 (1991) (clarifying that the Eleventh Amendment

2  does not bar suits against state officials sued in their individual capacities, nor does it bar suits for

3  prospective injunctive relief against state officials sued in their official capacities).  Therefore,

4  plaintiff's claims for monetary damages against defendants Schultz and John Does #1 and #2 in

5  their official capacities are barred by the Eleventh Amendment and must be dismissed.

6        B.  Eighth Amendment Prison Conditions Claim

7          *1. Governing Standards*

8        The Eighth Amendment prohibits both the imposition of cruel and unusual punishment

9  and inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.

10  2006).  Conditions of confinement claims require extreme deprivations that are sufficiently grave

11  to deny the minimal civilized measure of life's necessities.  Hudson v. McMillian, 503 U.S. 1, 9

12  (1992).  "An Eighth Amendment claim that a prison official has deprived [prisoners] of humane

13  conditions of confinement must meet two requirements, one objective and one subjective."  Allen

14  v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (citing Farmer v. Brennan, 511 U.S. 825, 834

15  (1994)).  The prisoner must "objectively show that he was deprived of something 'sufficiently

16  serious,'" and "make a subjective showing that the deprivation occurred with deliberate

17  indifference to [his] health or safety."  Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009)

18  (quoting Farmer, 511 U.S. at 834).

19        Under the objective requirement, conditions of confinement must pose a substantial risk of

20  sufficiently serious harm.  Farmer, 511 U.S. at 834.  The conditions of a prison may be restrictive

21  and harsh, but officials have the duty to provide prisoners with adequate food, clothing, shelter,

22  sanitation, medical care, and personal safety.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.

23  2000).  The court may consider the circumstances, nature, and duration of the deprivation to

24  determine whether the risk of harm is sufficiently serious.  Lewis, 217 F.3d at 731.

25        The subjective requirement, relating to defendant's state of mind, requires "deliberate

26  indifference."  Id.  To establish that a particular official acted with deliberate indifference, a

27  plaintiff must allege that the official was both aware of a particular risk or condition and failed to

28  take corrective action.  "[T]he official must both be aware of facts from which the inference could

1    be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

2    Farmer, 511 U.S. at 837.

3            *2. Discussion*

4            Plaintiff alleges that by failing to provide a ladder or other safe measure to access the

5    upper bunk, defendants were deliberately indifferent to a serious risk that he would fall and injure

6    himself violating his right to safe prison conditions under the Eighth Amendment.  However,

7    "[c]ourts throughout the Ninth Circuit as well as federal courts in other circuits have consistently

8    held that a ladderless bunk bed in and of itself does not rise to the level of cruel and unusual

9    punishment in violation of the Eighth Amendment." Bridgewater v. Cate, 2013 WL 4051626, at

10   *2 (E.D. Cal. Aug. 9, 2013) (recommending dismissal of ladderless bunk bed claim asserted

11   against warden and secretary of corrections, and dismissal of different claim against different

12   defendant based on exhaustion grounds), findings and recommendations adopted in part, rejected

13   in part, 2013 WL 6564278 (E.D. Cal. Dec. 13, 2013) (adopting findings regarding ladderless

14   bunk bed claim, but rejecting failure to exhaust finding on different claim).  Plaintiff's first claim

15   is similar to the prisoner's claim in Millsap v. Cate, 2012 WL 1037949 (E.D. Cal. Mar. 27, 2012).

16   In Millsap, the prisoner alleged he tried to access the upper bunk by standing on a stool which

17   collapsed and caused him to fall, arguing that the cell design posed a substantial risk of serious

18   harm known to defendants. Id. at *1.  The assigned magistrate judge recommended denying the

19   defendants' motion to dismiss, but the district court disagreed, noting that "[m]ultiple district

20   courts in the Ninth Circuit have held that the failure of prison officials to equip prison cells with a

21   ladder or some other 'safety apparatus' to assist inmates in ascending to and descending from

22   bunk beds does not amount to the deprivation of 'a minimally civilized measure of life's

23   necessities.'" Id. at *4.  The district court also noted that "[f]ederal courts in other circuits also

24   'universally espouse the view that a ladderless bunk is not a sufficiently unsafe living condition

25   warranting Eighth Amendment protection.'"  Id. (quoting Jenkins v. Fischer, 2010 WL 6230517

26   at *5 (N.D.N.Y. Sept. 8, 2010)).

27           In light of these authorities, plaintiff's first claim contesting unsafe prison conditions must

28   be dismissed.

6

1          C. <u>Eighth Amendment Deliberate Indifference Claim</u>

2              *1. Governing Standards*

3      Plaintiff's second Eighth Amendment claim against defendants has two prongs:  the

4  presence of a serious medical need or a substantial risk of harm, and deliberate indifference

5  by defendants to that need or risk.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837.  "The existence of an injury that

6  a reasonable doctor or patient would find important and worthy of comment or treatment; the

7  presence of a medical condition that significantly affects and individual's daily activities; or the

8  existence of chronic and substantial pain are examples of indications that a prisoner has a

9  'serious' need for medical treatment."  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9 Cir.

10  1992).  "For a claim . . . based on a failure to prevent harm," the plaintiff must allege that he was

11  "incarcerated under conditions posing a substantial risk of serious harm."  <u>Farmer</u>, 511 U.S. at

12  834.  Deliberate indifference may be shown by "(a) a purposeful act or failure to respond to a

13  prisoner's pain or possible medical need and (b) harm caused by the indifference."  <u>Jett v. Penner</u>,

14  439 F.3d 1091, 1096 (9th Cir. 2006) (citing <u>McGuckin</u>, 974 F.2d at 1059.)  "Indifference may

15  appear when prison officials deny, delay or intentionally interfere with medical treatment. . . ."

16  <u>Jett</u>, 439 F.3d at 1096 (internal quotation marks and citations omitted).

17              *2. Discussion*

18      Although plaintiff cannot pursue a conditions of confinement claim under the Eighth

19  Amendment, the risks associated with an upper bunk can rise to the level of a sufficiently serious

20  risk under the Eighth Amendment based on the prisoner's serious medical needs.  <u>See</u> <u>West v.</u>

21  <u>Pettigrew</u>, 2013 WL 85380, at *2 (E.D. Cal. Jan. 8, 2013) ("Plaintiff's allegations that a medical

22  doctor issued a chrono for plaintiff to be housed in a lower bunk due to a back condition, and that

23  he was instead housed on an upper bunk, are sufficient to meet the first prong of his Eighth

24  Amendment claim").  Here, plaintiff claims he had a lower bunk authorization which was in the

25  CDCR records at the time that John Doe defendants were assigning plaintiff's cell.  Plaintiff's

26  allegations meet the objective prong of an Eighth Amendment claim.

27      However, plaintiff fails to provide sufficient facts for the Court to determine whether

28  either John Doe #1 or #2 were aware of the lower bunk authorization yet deliberately disregarded

it.  Although plaintiff claims it was in CDCR records, he includes no facts demonstrating that either John Doe was aware of the lower bunk authorization at the time they assigned his cell. Plaintiff's conclusory claim that defendants were "directly aware" and "legally noticed" as to the risk of harm based on prison regulations is devoid of facts showing how each defendant was aware of the lower bunk authorization.  Indeed, plaintiff claims even he was not aware he had the lower bunk authorization, and although he claims the housing restriction already existed and was available for viewing by the housing officers, he does not indicate when the authorization issued, or when he became aware of the authorization, and there are no facts showing these defendants actually viewed the lower bunk authorization and intentionally disregarded it.  Because plaintiff also asserts he had just returned from an outside medical appointment for "acute treatment," such information is important to determine when the lower bunk authorization issued.  Thus, plaintiff fails to meet the subjective prong of an Eighth Amendment claim.

As to the Warden, plaintiff includes no charging allegations as to defendant Schultz. Plaintiff claims he notified defendants, executive staff at CSP-SAC, and those responsible for housing inmates statewide as to the risk that inmates face, but plaintiff does not indicate when he notified them, for example, if it was before or after he was injured, or before or after he became aware he had a lower bunk authorization.  In addition, to the extent plaintiff named defendant Schultz as a defendant solely based on his role as Warden, such allegation fails to state a cognizable claim because there is no supervisory liability in § 1983 actions.  "Liability under § 1983 must be based on the personal involvement of the defendant."  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

D.  Doe Defendants

Plaintiff's use of Doe defendants is problematic.  See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  Rule 15 of the Federal Rules of Civil Procedure, not state law "Doe" pleading practices, governs whether new defendants may be added and if so, whether the claims against them would relate back to the filing of the initial complaint.  Should plaintiff learn the identities of the "Doe" parties he wishes to serve, he must promptly move pursuant to Rule 15 to file an amended complaint to add them as defendants.  See Brass v. County of Los Angeles, 328

1    F.3d 1192, 1197-98 (9th Cir. 2003).  If the timing of his amended complaint raises questions as to

2    the statute of limitations, plaintiff must satisfy the requirements of Rule 15(c), which is the

3    controlling procedure for adding defendants whose identities were discovered after the action was

4    commenced.  In addition, unknown persons cannot be served with process until they are

5    identified by their real names.  The Court will not investigate the names and identities of

6    unnamed defendants.  Plaintiff must identify at least one defendant by name so that service of

7    process can be accomplished; then plaintiff can attempt to identify other defendants through

8    discovery.[1]  Unless plaintiff can include allegations as to defendant Schultz's personal

9    involvement in plaintiff's housing assignment on October 29, 2024, or plaintiff's retention in an

10   upper bunk through November 5, 2024, plaintiff should provide the name of at least one

11   individual named as a defendant in any amended complaint.

12           E.  Conclusion

13           For the above reasons, plaintiff's complaint must be dismissed.  The Court will, however,

14   grant leave to file an amended complaint.

15   IV.    LEAVE TO AMEND

16           If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

17   about which he complains resulted in a deprivation of plaintiff's constitutional rights.  See e.g.,

18   West v. Atkins, 487 U.S. 42, 48 (1988).  Also, the complaint must allege in specific terms how

19   each named defendant is involved.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no

20   liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

21   defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. at 371; May v. Enomoto, 633

22   F.2d 164, 167 (9th Cir. 1980).  Furthermore, vague and conclusory allegations of official

23   participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266,

24   268 (9th Cir. 1982).

25   _____

26   [1] Where a defendant's identity is unknown prior to the filing of a complaint, the plaintiff should
     be given an opportunity through discovery to identify the unknown defendants, unless it is clear
27   that discovery would not uncover the identities or that the complaint would be dismissed on other
     grounds.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie, 629
28   F.2d at 642).

                                                    9

1    In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

2    make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

3    complaint be complete in itself without reference to any prior pleading.  This requirement exists

4    because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez

5    v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint

6    supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation

7    omitted)).  Once plaintiff files an amended complaint, the original pleading no longer serves any

8    function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim

9    and the involvement of each defendant must be sufficiently alleged.

10    In accordance with the above, IT IS HEREBY ORDERED that:

11        1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

12        2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

13    is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

14    § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

15    Director of the California Department of Corrections and Rehabilitation filed concurrently

16    herewith.

17        3.  Plaintiff's complaint is dismissed.

18        4.  Within thirty days from the date of this order, plaintiff shall complete the attached

19    Notice of Amendment and submit the following documents to the Court:

20            a.  The completed Notice of Amendment; and

21            b.  An original of the Amended Complaint.

22    Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the

23    Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must

24    also bear the docket number assigned to this case and must be labeled "Amended Complaint."

25    Failure to file an amended complaint in accordance with this order may result in the dismissal of

26    this action.

27    ///

28    ///

10

1        5.  The Clerk of the Court shall send plaintiff the form for filing a civil rights complaint by

2    a prisoner.

3

4    Dated:  April 1, 2025

5                                                                    _____

6                                                                    CHI SOO KIM
                                                                     UNITED STATES MAGISTRATE JUDGE
7

8    /1/thor0733.14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL LEE THORNBERRY,                    No.  2:25-cv-0733 CSK P

                    Plaintiff,
12

13        v.                                    NOTICE OF AMENDMENT

14   JASON SCHULTZ,

                    Defendant.
15

16

17        Plaintiff submits the following document in compliance with the court's order

18   filed on _____ (date).

19

20                         ☐         Amended Complaint

21                         (Check this box if submitting an Amended Complaint)

22   DATED:

23                                    _____
                                      Plaintiff
24

25

26

27

28